UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                        Criminal Case No. 13-20809-1

v.                                   Honorable Linda V. Parker

FRANK HOGG,

        Defendant.

_____/

## OPINION FINDING DEFENDANT TO HAVE VIOLATED THE CONDITIONS OF SUPERVISED RELEASE

On May 10 and 11, 2022, this Court held a supervised release violation hearing in this matter. As set forth below, the Court concludes that the Government has established, by a preponderance of the evidence, that Defendant committed "Grade A" violations of supervised release.

### Background

On February 18, 2015, Defendant pleaded guilty pursuant to a Rule 11 plea agreement to one count of conspiracy to distribute over 28 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii) and 846. On July 8, 2015, this Court sentenced Defendant to a term of imprisonment of 90 months, followed by a supervised release term of 36 months. (ECF No. 71.) Defendant was released from prison on May 20, 2019 (*see* ECF No. 93 at Pg ID 444), but he violated the

terms of his supervised release by engaging in the distribution of controlled substances on July 30, 2019 (*id.* at Pg ID 445).

After Defendant admitted his guilt to the supervised release violation, this Court revoked his probation and sentenced him to 30 months' incarceration, to be served concurrently to any sentence imposed for the underlying offense.  (ECF No. 100.)  Defendant thereafter pleaded guilty in state court and was sentenced to a term of imprisonment of 365 days, which he began serving on August 10, 2020. (*See* ECF No. 107-1.)

Defendant thereafter filed a motion in this matter, requesting compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (ECF Nos. 102, 105.)  The Court granted Defendant's request in an opinion and order entered February 16, 2021, and sentenced him to time served.  (ECF No. 115.)  The Court imposed a supervised release term of one year, ordered Defendant to reside at his mother's residence in Flint, Michigan, and imposed the same conditions of release imposed when the Court originally sentenced Defendant.  (*Id.* at Pg ID 687.)  These conditions included that Defendant "not commit another federal, state or local crime" and that he "not unlawfully possess a controlled substance."  (ECF No. 71 at Pg ID 327.)

On January 7, 2022, Defendant's probation officer, Courtney M. Wilson, filed a report and petition for summons indicating that Defendant had violated

several conditions of his supervised release.  (ECF No. 116.)  Specifically, the

report indicated that Defendant violated the mandatory condition that he not

commit another federal, state, or local crime.  (*Id.* at Pg ID 690-91.)  According to

the report, Defendant was arrested on November 5, 2021, following an

investigation of Defendant for selling crack and powder cocaine by officers

working for the Flint Area Narcotics Group (FANG).  (*Id.*)  The search of a

residence located at 3049 Kleinpell in Burton, Michigan, on the date of

Defendant's arrest, uncovered a firearm, ammunition, narcotics, approximately

$19,000 in cash, and materials used to cut, weigh, and package narcotics for

distribution.  (*Id*.)  The residence was rented in Defendant's name.  (*Id.*)  On

January 7, 2022, this Court issued the requested summons.  (*Id*. at Pg ID 691.)

The parties appeared before Magistrate Judge Curtis Ivy, Jr. on January 18,

2022, at which time Defendant confirmed that he received written notice of the

alleged supervised release violations and that he had retained counsel.  The

magistrate judge released Defendant on bond.  Thereafter, a supervised release

hearing was scheduled and, after several stipulations, was continued to May 10,

2022.  As indicated, the Court held a supervised release hearing on May 10 and 11.

### Supervised Release Hearing

At the hearing, the Government called as witnesses Michigan State Police

Officer Albert West and Probation Officer Wilson.  The Government introduced as

exhibits several photographs taken during the execution of the search warrant on November 5, 2021 (Exhibits 2-10, 12, 13), and the laboratory report analyzing the drugs seized during the execution of the search warrant (Exhibit 11). Defendant called one witness, Tilisa Scroggins, and introduced one photograph from the residence as an exhibit (Exhibit A).

## Findings of Fact and Conclusions of Law

Having heard and observed the witnesses who testified at the hearing, allowing for this Court to assess credibility, having considered the exhibits submitted by the parties, having considered counsel's arguments, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.

## Findings of Fact

On November 5, 2021, Trooper West was employed by the Michigan State Police and assigned to FANG. In the last six years, he has conducted hundreds of narcotics investigations as a police officer. Prior to November 5, Trooper West was involved in an investigation of Defendant, who police suspected of selling powder and crack cocaine. Trooper West identified Defendant at the hearing.

During the investigation, Trooper West observed Defendant and a vehicle registered in Defendant's name (a Chrysler 300) on numerous occasions and at various times of day at a residence located at 3049 Kleinpell in Burton, Michigan.

4

A search warrant was secured for the residence and executed by Trooper West and a team of officers at approximately 7:00 a.m. on November 5, 2021.

When the officers entered the residence, two individuals were located in the living room just inside the front door. (*See* Govt.'s Ex. 3.) One of the individuals, Javar Beason, was on the couch perpendicular to the front door. Equan Bracy was on the other couch. Officers found a 9 mm Rugar pistol underneath a cushion of the couch where Beason was located. (Govt.'s Exs. 12, 13.) Beason had hydrocodone pills inside one of his shoes. The officers found crack cocaine on Bracy.

Defendant was found in the bedroom immediately southwest of the home's front door, in which there was a bed on the floor and a dresser. (Govt.'s Ex. 4.). There was another bedroom inside the residence but the southwest bedroom was the only one that appeared occupied.

Inside the southwest bedroom, the officers found a cell phone, documentation for Defendant's supervised release from prison, a gun case containing Rugar ammunition for a 9 mm pistol, and a wallet containing Defendant's identification. (*See* Govt.'s Ex. 8.) As shown in a photograph taken during the search warrant's execution, the gun case was found between the head of the bed and the dresser. (*See* Govt.'s Ex. 4.) Men's clothing and footwear were in the bedroom, as well. (*See id*.) Roughly $900 in cash was recovered from

Defendant's person.  The officers also found $4,000 in cash in a safe under the home's stairwell and $12,000 in cash above the stairwell.

Inside cabinets in the residence's kitchen, the officers found multiple types of narcotics (cocaine, fentanyl, and crystal methamphetamine).  (*See* Govt.'s Exs. 2, 6, 7.)  In the kitchen, the officers also found materials commonly used in drug dealing, including plastic baggies, a digital scale, vinyl gloves, and cutting agents (boric acid and creatine).  (*Id.*)  Laboratory analysis of the substances recovered from the kitchen detected 205.40 grams of cocaine, 14.57 grams of fentanyl, and 21.40 grams of methamphetamine.  (Govt.'s Ex. 11.)

A pair of crutches was inside the kitchen.  (*See* Govt.'s Ex. 5.)  Trooper West surmised that the crutches belonged to Beason, who informed the officers that he had a leg injury.

The second bedroom inside the residence was unfurnished.  (*See* Def.'s Ex. A.)  Only an open, carry-on sized suitcase filled with clothing and a few apparel items, all of which were on the floor, appear in the photograph of this room, which an officer took during the search warrant's execution.  (*Id.*)  The officers did not determine who owned those items.  Trooper West found no indication that the room was being used as a bedroom by anyone.  There were no beds in the residence aside from the one in the southwest bedroom that appeared to be occupied by Defendant.

Two vehicles were parked at the residence when the officers executed the search warrant: the Chrysler 300 registered in Defendant's name and a Pontiac Grand Prix registered to Bracy.  In Defendant's vehicle, the officers found a lease agreement between Defendant and Landlord Solutions, Inc. for 3049 Kleinpell, dated September 21, 2021.  (Govt.'s Ex. 9.)  Defendant was the only occupant listed on the lease agreement.  (*Id*.)  Also inside the vehicle was a document reflecting Defendant's payment of $850 cash to Landlord Solutions on September 29 for the first month's rent for the residence.  (Govt.'s Ex. 10.)  An unspecified quantity of crack cocaine was recovered from Bracy's vehicle.

Text messages on the cellphone found in the southwest bedroom and traced to Defendant were reviewed by the officers.  (*See* Govt.'s Ex. 1.)  Trooper West testified that, based on his experience in narcotics investigations, messages between Defendant and other individuals downloaded from the cellphone reflected that Defendant was distributing narcotics.

According to Probation Officer Wilson, Defendant's registered address was on Colban Street in Flint, and he was never told that Defendant signed a lease elsewhere.  Defendant did not have a job that was verifiable through a paystub between September and November 2021.

Tilisa Scroggins, who shares a child with Defendant, testified that she had been to 3049 Kleinpell maybe two times and had spent the night there with

7

Defendant.  Scroggins testified, however, that the house belonged to Defendant's

cousin, Santino Gatewood, and that Gatewood lived there.  When Scroggins

needed a place to store some of her belongings, Gatewood and Defendant told her

that she could store them at the Kleinpell residence.

According to Scroggins, the items she stored at the Kleinpell residence

included her clothing, her three kids' clothing, and a gun box with ammunition

inside.  She and Gatewood put the items inside the residence and they were placed

"all over the house," including the two bedrooms.  Scroggins did not know,

however, where the gun box had been placed.  Scroggins also did not know exactly

when she stored her items at the Kleinpell residence but testified that it was

sometime in late October or early November.

The Court did not find Scroggins' testimony credible.  She could not specify

when she had been to the Kleinpell residence or when she had put her belongings

there.  Further, it is highly uncommon that someone storing their belongings at

someone else's house would place those belongings throughout the house, as

opposed to in one open space.  Notably, defense counsel never asked Scroggins to

identify any of the items depicted in the pictures of the residence taken by the

officers on November 5 as belonging to her.  Aside from the gun box, none of the

items described by Scroggins are visible in the pictures of the bedrooms, living

room, or kitchen.  And defense counsel never asked Scroggins to identify the gun

box that was found by the officers in the southwest bedroom as the one she claimed to have stored at the house.

## Conclusions of Law

18 U.S.C. § 3583 governs the Court's disposition of this matter.  Fed. R. Crim. P. 32.1(d).  Under § 3583(e)(3), a district court may revoke a term of supervised release if it finds "by a preponderance of the evidence that the defendant violated a condition of supervised release[.]"  18 U.S.C. § 3583(e)(3); *United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000).  "The preponderance standard requires a lesser quantum of proof and enables the trier of fact to make a determination of guilt that it could not make if the standard were that at trial, i.e., guilt beyond a reasonable doubt."  *United States v. Thompson*, 314 F. App'x 797, 799 (6th Cir. 2008) (citing *In re Winship*, 397 U.S. 358, 368 (1970)).

The Government is charging Defendant with violating his supervised release by engaging in conduct constituting federal, state, and/or local offenses (i.e., being a felon in possession of a firearm and ammunition and manufacturing, delivery, and possession of narcotics).  As set forth in the United States Sentencing Guidelines, such conduct constitutes a Grade A supervised release violation: "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of

9

a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years[.]" U.S.S.G. § 7B1.1(a)(1).

The Government has presented sufficient evidence to prove, by a preponderance of the evidence, that Defendant, a felon, actually or constructively possessed a firearm and ammunition. Actual possession exists where the weapon or ammunition "is within the immediate power or control of the individual." *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013) (quoting *United States v. Murphy*, 107 F.3d 1199, 1207-08 (6th Cir. 1997)). "A weapon [or ammunition] is 'constructively' possessed if the government can show the defendant 'knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *Id*. (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). "Possession of either variety may be proven by direct or circumstantial evidence." *Id.* (citing *United States v. Arnold*, 486 F.3d 177, 181 (6th Cir. 2007)).

"[P]resence where a firearm was found, without more, is insufficient to establish knowledge, power, or intention to exercise control over the firearm." *United States v. Coffee*, 434 F.3d 887, 896 (6th Cir. 2006) (internal quotation marks and citation omitted). The Sixth Circuit has held, however, that "[p]roof that the person has dominion over the premises where the firearm [or ammunition]

is located is sufficient to establish constructive possession." *Id.* (quoting *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)).

The Lease Agreement found in Defendant's vehicle established that he rented the residence at 3049 Kleinpell beginning September 29, 2021.  No other occupants were listed on the lease.  Defendant paid the first month's rent.  The investigating officers observed Defendant and Defendant's vehicle at the residence on numerous occasions and at various times of day.  Defendant and his belongings were located in the only bedroom in the residence that appeared to be occupied.  The gun box containing the 9 mm ammunition sat on the floor within inches of the pillow on the bed in that room.  While the 9 mm Rugar pistol was found in the living room, it was the same brand and caliber as the ammunition inside the gun box and, in any event, was within the premises over which Defendant had control.

Defendant's dominion over the premises also supports his guilt, by a preponderance of the evidence, of possessing and manufacturing with the intent to deliver the narcotics found within the residence.  *See United States v. Latimer*, 16 F.4th 222, 225 (6th Cir. 2021) (internal quotation marks and citation omitted) (possession of contraband to support controlled substances charge can be shown through either actual or constructive possession and the latter "can be demonstrated by showing that a defendant had either (1) dominion or control over the item itself, or (2) dominion over the premises where the item is located").  The quantity of the

narcotics and the distribution-related materials (i.e., the scale and items used to cut and package narcotics) found in the kitchen of the residence, as well as the substantial amount of cash recovered from Defendant's person and inside the residence, indicate that the narcotics were possessed with the intent of being sold. *See United States v. Sadler*, 24 F.4th 515, 550-51 (6th Cir. 2022) (citing *United States v. Hill*, 142 F.3d 305, 311-312 (6th Cir. 1998)) (finding constructive possession with intent to distribute when drugs were found in large quantities along with items like scales, razor blades, packaging materials, and the defendant's own possessions); *United States v. Woods*, 26 F. App'x 448, 451 (6th Cir. 2001) (internal citations omitted) ("The intent [to distribute] element may be inferred from a variety of factors, including, but not limited to, the possession of quantities of drugs too large for personal use, the value of the drugs, the presence of drug distribution paraphernalia, including scales and packaging materials, the concurrent seizure of large amounts of currency, and the purity of the drugs[.]"). The text messages from Defendant's cell phone also indicate that he was engaged in narcotics trafficking.

These findings are not undermined by the recovery of narcotics from Bracy and Beason, or the discovery of a quantity of crack cocaine in Bracy's vehicle. The narcotics and drug distribution paraphernalia were stored inside the kitchen of a residence rented only in Defendant's name, and for which he was the sole listed

occupant.  Only one bedroom of the house appeared to be occupied and it contained Defendant's belongings.  Defendant was inside that bedroom when the officers executed the search warrant.  Text messages from potential buyers were found on the cell phone recovered from Defendant.  In any event, "[p]ossession . . . 'need not be exclusive but may be joint.'"  *United States v. Paige*, 470 F.3d 603, 610 (6th Cir. 2006) (quoting *United States v. Covert*, 117 F.3d 940, 948 (6th Cir. 1997)).

### Conclusion

For these reasons, the Court concludes that the Government established, by a preponderance of the evidence, that Defendant engaged in conduct constituting Grade A violations of his supervised release.  The Court therefore **ORDERS** Defendant to appear for sentencing before the undersigned on **May 25, 2022** at **11:00 a.m**. at the Theodore Levin Courthouse, 231 West Lafayette Blvd., Courtroom 206, Detroit, MI 48226.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 16, 2022

13